UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
DARYL PHILLIPS, *pro se*,　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　Petitioner,　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　:　　　**OPINION AND ORDER**
　　-against-　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　:　　　08-CV-1887 (DLI)
WARDEN, Clinton Correctional Facility,　　　:
　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　Respondent.　　　　　　　　　:
----------------------------------------------------X

**DORA L. IRIZARRY, United States District Judge:**

　　*Pro se* petitioner Darryl Phillips is currently serving a twelve-year sentence following his July 22, 2004 conviction in New York State Supreme Court, Richmond County, for sodomy in the first degree ("sodomy"), New York Penal Law § 130.50[3], three counts of sexual abuse in the first degree ("sexual abuse"), New York Penal Law § 130.65[3], and endangering the welfare of a child ("endangering the welfare of a child"), New York Penal Law § 260.10[1]. Pursuant to 28 U.S.C. § 2254, he challenges his conviction by contending that: (1) the trial court erred by admitting the victim's out-of-court statements under the "prompt outcry" hearsay exception; (2) the trial court erred by admitting allegedly unresponsive and prejudicial testimony of the victim's grandmother; (3) the victim's in-court identification of the petitioner was improperly coached by a court officer; (4) he received ineffective assistance of counsel; (5) certain prosecution witnesses were incredible; (6) the prosecution made improper comments during summation; (7) the two alternate jurors should not have been dismissed prior to deliberations; and (8) he has never seen People's Trial Exhibit Number 3. For the reasons set forth below, the petition is denied.

I. **Summary of the Facts**

   a. **Background**

In February 2003, petitioner moved into the home of his grandmother, Juanita Armstrong, at 565 Bristol Street in Brooklyn, New York (the "apartment"). (Trial[1] Transcript ("Tr.") at 17.) Also living at the apartment were petitioner's aunt, Cynthia Armstrong, and Cynthia's two daughters, Tara[2] (the "victim") and Lisa Armstrong. (Tr. at 12-13.) Tara testified at trial that, on May 31, 2003, petitioner forced her to touch his penis and perform oral sex on him in the kitchen of the apartment. (Tr. at 113-19.) Tara further testified that petitioner inserted his penis into her vagina on multiple occasions, including in the bathroom of the apartment and in the hallway outside the apartment. (Tr. at 119, 122-24.) Tara reported these events to her mother Cynthia on June 16, 2003. (Tr. at 125.) Cynthia then told Juanita, who asked the petitioner to leave the house. (Tr. at 22-24, 38.) None of the Armstrong women called the police at that time. (Tr. at 23.) Tara was taken to the hospital on June 19, 2003, and the police were notified of the alleged incidents. (Tr. at 23, 78.) Petitioner returned to the Armstrong residence on August 2, 2003, accompanied by his other grandmother and an unidentified aunt and cousin. (Tr. at 25.) Upon seeing the petitioner, Juanita called the police, whereupon petitioner was arrested. (Tr. at 26, 86-88.)

---

[1] The trial was held from July 15 to July 22, 2004.

[2] At the time of the sexual abuse, the victim was ten years old. At the time of trial, the victim was eleven years old.

### b. Procedural History

Trial against petitioner commenced on July 15, 2004. On July 22, 2004, the jury convicted petitioner of sodomy, three counts of sexual abuse, and endangering the welfare of a child. (Tr. at 241.) On August 11, 2004, the trial court sentenced the petitioner to twelve years in prison. Petitioner appealed his conviction to the New York State Supreme Court, Appellate Division, Second Department ("Appellate Division"), arguing that the trial court erred by admitting: the victim's out-of-court statements under the "prompt outcry" hearsay exception, and prejudicial and unresponsive testimony of the victim's grandmother. Petitioner also later filed a supplemental *pro se* brief, arguing that: (1) the victim's in-court identification of the petitioner was improperly coached by a court officer; (2) certain prosecution witnesses should not have been credited by the jury; (3) certain actions and statements at trial did not appear on the record; (4) there was no evidence of forcible compulsion; and (5) he received ineffective assistance of counsel.

The Appellate Division affirmed the conviction. *People v. Phillips*, 45 A.D.3d 702 (2d Dep't 2007). The court agreed with petitioner that "the [trial court] should have instructed the jury to disregard certain testimony of the complainant's grandmother as prejudicial and nonresponsive." *Id.* However, the court found that this error was "harmless beyond a reasonable doubt" because the evidence of petitioner's guilt was "overwhelming." *Id.* The court further held that the petitioner "failed to preserve for appellate review his contention that the [trial court] erred in admitting testimony of a 'prompt' outcry of sexual abuse . . . ." *Id.* (citations omitted). The court further held that the petitioner had "failed to object to those portions of the prosecutor's summation which he [challenged] on appeal, and consequently, his contentions in

3

[that] regard [were] unpreserved for appellate review." *Id*. (citations omitted). Lastly, the court held that the remaining claims, raised by petitioner in his *pro se* brief, were without merit. *Id*.

On March 12, 2008, the Court of Appeals denied petitioner's application for leave to appeal. *People v. Phillips*, 10 N.Y.3d 815 (N.Y. 2008). Petitioner did not seek a writ of certiorari from the United States Supreme Court. He timely filed this petition for a writ of habeas corpus on April 28, 2008.

## II. Discussion

### a. Legal Standards

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") narrowed the scope of federal habeas review of state convictions when the state courts have adjudicated a petitioner's federal claims on the merits. Under the AEDPA standard, which governs the review of petitions challenging state convictions entered after 1996, federal courts may grant habeas relief only if the state court's adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). An "unreasonable determination" is one in which "the state court identifie[d] the correct governing legal principle

4

from [the Supreme Court's] decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Id.* at 413. A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the state court's application must have been "objectively reasonable." *Id.* at 409. "[A] determination of a factual issue made by a State court shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

"A district court must dismiss any petition for habeas corpus, brought pursuant to 28 U.S.C. § 2254, that contains issues not exhausted in the state courts." *McKethan v. Mantello*, 292 F.3d 119, 122 (2d Cir. 2002). When a petitioner presents the district court with a "mixed petition," including both exhausted and unexhausted issues, the court can offer the petitioner "the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only the exhausted claims." *McKethan*, 292 F.3d at 122 (citation omitted). "Alternatively, a district court may also dismiss the petition with a judgment on the merits." *Id.* (citation omitted); *see also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

> State remedies are deemed exhausted when a petitioner has: (i) presented the federal constitutional claim asserted in the petition to the highest state court (after preserving it as required by state law in lower courts) and (ii) informed that court (and lower courts) about both the factual and legal bases for the federal claim. Moreover, even if a federal claim has not been presented to the highest state court or preserved in lower state courts under state law, it will be deemed exhausted if it is, as a result, then procedurally barred under state law.

5

*McKethan*, 292 F.3d at 122 (citations and internal quotation marks omitted).

District courts cannot review a state prisoner's federal claims that are barred by an independent and adequate state procedural rule, "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). If a state court's holding contains a plain statement that a claim is procedurally barred based on a state rule, the federal court may not review it even if the state court also rejected the claim on the merits in the alternative. *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *accord Fama v. Comm. of Corr. Servs.*, 235 F.3d 804, 811 n.4 (2d Cir. 2000) ("[W]e have held that where a state court says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not preserved."). On the other hand, if the state court holds that a claim is either unpreserved for appellate review or without merit, the claim is deemed preserved and therefore subject to habeas review. *Fama*, 235 F.3d at 810-11.

Because petitioner is a *pro se* litigant, the court holds his pleadings to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The court interprets the petition "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted).

### b. Prompt Outcry of Complaining Witness

First, petitioner asserts that the trial court erred in admitting testimony of a prompt outcry of sexual abuse because "[t]he complaining witness confessed to waiting [sixteen] days before

6

claiming to report the alleged incident to anyone of authority." (Petition at 5.) Under the established prompt outcry exception to the hearsay rule precluding bolstering a witness's trial testimony with pretrial statements, evidence that the victim of sexual assault promptly complained about the incident is admissible to corroborate the allegation that an assault took place. *People v. McDaniel*, 81 N.Y.2d 10, 16 (1993).

The Appellate Division expressly ruled that the petitioner failed to preserve this issue for appellate review because he failed to comply with N.Y. CRIM. PROC. LAW ("CPL") § 470.05(2). *See People v. Phillips*, 45 A.D.3d 702 (2d Dep't 2007). The Appellate Division's explicit invocation of this procedural default constitutes an independent and adequate state ground of decision, notwithstanding that the court addressed the merits of the claim in an alternative holding. *See Brown v. People*, 2006 WL 3085704, at *4 (E.D.N.Y. Oct. 30, 2006). Petitioner has neither alleged cause for the default or actual prejudice from the violation, nor demonstrated that failure to consider the claim would result in a fundamental miscarriage of justice. *See Id.* at *4-5; *Coleman*, 501 U.S. at 750 ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."). Accordingly, petitioner's claim that the trial court erred in allowing the introduction of the "prompt outcry" evidence is procedurally barred from federal habeas review.

### c. Testimony of Juanita Armstrong

Petitioner next argues that the trial court should have instructed the jury to disregard certain testimony of Juanita Armstrong as prejudicial. (Petition at 6.) The Appellate Division agreed, but held that, "because the evidence of the defendant's guilt, without reference to the error, was overwhelming, and there [was] no reasonable probability that the error might have contributed to the defendant's conviction, this error was harmless beyond a reasonable doubt." *Phillips*, 45 A.D.3d 702.

Even assuming the admission of Juanita Armstrong's testimony was an error of constitutional dimension, habeas relief would be appropriate only if the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); *see also Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) ("[I]n § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht*, whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in *Chapman*.") (internal citations omitted). "[T]he principal factors to be considered are the importance of the witness's wrongly admitted testimony, and the overall strength of the prosecution's case." *Wray v. Johnson*, 202 F.3d 515, 526 (2d Cir. 2000) (citing *Brecht*, 507 U.S. at 639; *Kotteakos*, 328 U.S. at 762; *Dunnigan*, 137 F.3d at 130; *United States v. Concepcion*, 983 F.2d 369, 379-80 (2d Cir. 1992)).

The testimony in issue consists of Juanita Armstrong's unsolicited opinions that the petitioner was guilty of the alleged acts,[3] the ultimate fact to be decided by the jury. However, Armstrong's testimony made clear that her opinions were not based on first-hand knowledge:

> Q. You didn't see anything going on between Tara and Darryl?
>
> A. No, I didn't see it with my own eyes.

(Tr. 32:8-10.) Thus, any weight or prejudicial effect that her unsolicited opinion regarding petitioner's guilt could have had on the jury was substantially minimized by Armstrong's unequivocal admission that she had no first-hand knowledge of the crucial events in question. Additionally, the jury was given instructions that further reduced any effect this testimony could have had, to wit, (1) in evaluating a witness' testimony, the jury should consider the "opportunity that the witness had to observe the facts testified to," and (2) the jury should not be swayed by speculation, prejudice or sympathy. (Tr. 195:2-12, 201:5-9, 225:1-13.) It is well-settled that the jury is presumed to have followed the court's instructions. *Zafiro v. United States*, 506 U.S. 534, 537 (1993). Moreover, the overall strength of the prosecution's case was quite strong. Other evidence presented at trial, including the victim's identification of the petitioner and detailed description of the events, which was partly corroborated by the testimony of the victim's mother, was extremely damaging to the petitioner and, though not dispositive, sufficient, such that the

---

[3] *See, e.g.*, Tr. at 22 ("I don't know what's going on, why Darryl had to do this. He didn't have to do that.").

absence of the challenged testimony would not have led the jury to acquit the petitioner. Having duly balanced the relevant factors, habeas relief is not warranted.[4]

### d. Coached Identification

Petitioner claims that the victim's in-court identification of him was coached by a court officer. A review of the trial transcript indicates that: the victim (who was related to the petitioner by blood and lived under the same roof with him and other family members) testified under oath, at length, and in significant detail about the incidents of sexual abuse; during the victim's testimony, the petitioner was repeatedly identified as the perpetrator of these acts (Tr. 111:2 – 125:17); at the end of the victim's testimony, the prosecutor asked her to point out the perpetrator in the courtroom (*Id.* 126:5 – 18); the trial judge instructed the court officer to escort the victim out of the witness box, into the well area, and down the aisle to facilitate the identification (*Id.* 126:8 – 20); the victim pointed to the petitioner, and verbally confirmed that she was identifying petitioner. (*Id.* 126:25 – 127:10.) Petitioner claims that the trial transcript fails to reflect that the victim was unable to point to the petitioner until the court officer placed his arm on her shoulder and whispered into her ear. (Petition at 8, Memorandum in Support at 7.)

Even assuming the court officer did improperly coach the victim, such that it rose to the level of a constitutional violation, the record clearly establishes that the error had no "'substantial

---

[4] The background testimony provided by Juanita Armstrong was also harmless. The evidence had little importance, if any, as it was not relevant to a critical issue at trial. Moreover, as discussed above, the jury was instructed that it must not be swayed by speculation, prejudice or sympathy, and the prosecution's case was quite strong. On balance, there is no reasonable probability that the evidence had a substantial and injurious effect on the deliberative process by which the jury reached its verdict.

10

and injurious effect or influence in determining the jury's verdict.'" *Brecht*, 507 U.S. at 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). Petitioner is not "entitled to habeas relief based on trial error unless [he] can establish that it resulted in 'actual prejudice.'" *Brecht*, 507 U.S. at 637 (citing *United States v. Lane*, 474 U.S. 438, 449 (1986)). Although the identification plainly bore on a critical issue—identifying the petitioner as the alleged perpetrator of the sexual abuse, it was not used to establish any new facts. On the contrary, the petitioner had already been lawfully identified as the perpetrator of the sexual abuse through the testimony of the victim who was a blood relative of the petitioner and had been living in the same apartment with him and other family members for some time. (Tr. 112 – 125.) *See Wray*, 202 F.3d at 526 ("where the wrongly admitted evidence was cumulative of other properly admitted evidence, it is less likely to have injuriously influenced the jury's verdict"). This familial and special relationship established an independent basis for the victim's identification of petitioner. As such, it is unlikely that any conduct by a court officer would have impacted her ability to identify petitioner as her assailant. Moreover, the sexual assaults occurred repeatedly over a period of time as opposed to being an isolated incident. Under these circumstances, it can hardly be said that the victim, then eleven years old, could not identify her assailant without prompting. In addition, the prosecution's case was strong. *Id.* (strength of the prosecution's case is probably the most critical factor in determining whether error was harmless). Therefore, even if the evidence was improperly admitted, the court finds that it did not have a substantial and injurious effect or influence on the jury.

### e. Ineffective Assistance of Trial Counsel

Petitioner contends that he was denied effective assistance of trial counsel because of an alleged conflict of interest between him and counsel, counsel's failure to raise a speedy trial claim, and counsel's use of a laptop computer during trial. As discussed in more detail below, petitioner's complaints about his trial counsel's performance do not satisfy the strict criteria of *Strickland*—either individually or collectively. Therefore, his ineffective assistance of counsel claim has no merit.

#### i. Conflict of Interest

"The right to counsel under the Sixth Amendment entails a correlative right to representation that is free from conflicts of interest." *United States v. Lew*, 25 F.3d 146, 152 (2d Cir. 1994). A defendant suffers a violation of the Sixth Amendment if his attorney has (1) an actual conflict of interest that adversely affected the attorney's performance, or (2) a potential conflict of interest that resulted in prejudice to the defendant. *United States v. Levy*, 25 F.3d 146, 152 (2d Cir. 1994).

An actual conflict between a lawyer and his client exists "when, during the course of the representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action." *Winkler v. Keane*, 7 F.3d 304, 307 (2d Cir. 1993). If the defendant establishes that an actual conflict exists, "he need not prove prejudice, but simply that a 'lapse of representation' resulted from the conflict." *United States v. Malpiedi*, 62 F.3d 465, 469 (2d Cir. 1995). That is, the defendant must "demonstrate that some plausible alternative defense strategy or tactic might have been pursued, and that the alternative defense was

inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." *Lew*, 25 F.3d at 157. A "potential conflict of interest exists if the interests of the defendant may place the attorney under inconsistent duties at some time in the future." *United States v. Kliti*, 156 F.3d 150, 153 n.3 (2d Cir. 1998) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 356 n.3 (1980)). Where a defendant can establish only potential conflict, a showing that a lapse of representation occurred is not sufficient; the defendant must show that he has been prejudiced by counsel's actions. *See Winkler*, 7 F.3d at 307.

Petitioner contends that he was denied effective assistance of trial counsel because of an alleged conflict of interest based on counsel's purported personal relationship with the district attorney's daughter. Nothing in the record supports petitioner's contention. Nevertheless, assuming that such a relationship existed, and that it created an actual conflict, there has simply been no showing by petitioner that the conflict led to a lapse in representation. Similarly, assuming instead counsel's purported relationship gave rise to a potential conflict of interest, petitioner has failed to demonstrate prejudice resulting from the conflict. Thus, habeas relief is unwarranted.

### ii. Speedy Trial & Laptop Use

Petitioner also contends that his trial counsel rendered ineffective assistance by failing to raise a speedy trial claim pursuant to CPL § 30.30,[5] and using his laptop inappropriately during trial.

---

[5] To the extent petitioner is raising the § 30.30 issue as a separate basis for habeas relief, the state speedy trial right under § 30.30 is distinct from the federal constitutional speedy trial

13

*Strickland v. Washington* sets forth the standard for ineffective assistance of counsel. 466 U.S. 668, 687 (1984). To prevail under *Strickland*, a petitioner must show that his counsel's representation "fell below an objective standard of reasonableness" and that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687. Counsel is "strongly presumed" to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 689. The *Strickland* court defined a "reasonable probability" as a "probability sufficient to undermine confidence in the outcome." *Id.* at 694. This court must "determine whether, in light of all circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690.

It is well settled that trial counsel's "[f]ailure to make a meritless argument does not amount to ineffective assistance." *United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999). The record indicates that counsel evaluated petitioner's speedy trial claim and found it to be without merit because of excludable time which did not count toward the 180 days within which the People had to be ready for trial pursuant to § 30.30. (Sentencing Tr. at 8-9.) The mere fact that petitioner may not have received an adequate explanation of the § 30.30 calculation from counsel does not render the representation ineffective. Regarding the laptop usage, counsel's alleged behavior would not be sufficient to satisfy the requirement that there be "a reasonable probability

---

right and involves a different factual and legal analysis. For this reason, when petitioner raised his statutory speedy trial claim at the appellate level, he did not present a federal claim to those courts. *See, e.g., Rodriguez v. Miller*, 1997 WL 599388, at *2 (S.D.N.Y. Sept. 29, 1997) ("a CPL § 30.30 claim, has been held not to raise the federal constitutional speedy trial claim for purposes of a federal habeas petition"). Accordingly, even if a violation of § 30.30 occurred, the court could not grant relief on this basis. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law.").

that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

### f. Credibility of Tara & Cynthia Armstrong

Petitioner also appears to argue that the jury should not have credited the testimony of Tara and Cynthia Armstrong. However, it is well settled that the court is not permitted to revisit a jury's determinations as to witness credibility and veracity on habeas review. *See Garrett v. Perlman*, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) (citing *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) ("[A]ssessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on [habeas] appeal.")). Here, although the defense raised credibility issues with respect to the testimony of both witnesses, the jury nonetheless was entitled to credit their testimony, a decision which this court may not second-guess.

### g. Unexhausted Claims

Petitioner has arguably raised three other grounds for habeas relief in the Memorandum in Support of his Petition.[6] First, petitioner argues that the prosecutor improperly described trial evidence during summation. Second, petitioner questions the discharge of the two alternate jurors. Third, petitioner complains that he has never seen People's Exhibit No. 3, a document

---

[6] Given petitioner's *pro se* status, the court has liberally construed the Petition, Memorandum in Support, and *authorized* Reply Memoranda, to raise any arguments they reasonably suggest. The court has also received numerous unauthorized submissions from petitioner. Any claims or arguments raised in those letters have been disregarded and are consequently not addressed in this Opinion & Order. In any event, upon review of petitioner's unauthorized submissions, the court found nothing of merit to address.

concerning the weather on May 31, 2003, of which the court took judicial notice. These claims were not raised at the state court level, and are therefore unexhausted.

Because the factual basis of the first two claims (improper summation and dismissal of alternate jurors) appeared on the record, petitioner cannot now return to state court to bring these on-the-record claims since he has already taken his direct appeal.[7] Thus, these claims are deemed exhausted but procedurally barred from review by this court. *McKethan*, 292 F.3d at 122. Petitioner cannot avoid this procedural default because he has not identified any cause for his failure to raise these claims, nor has he shown actual innocence. *Id.*

In any event, these claims would otherwise be rejected on substantive grounds. Regarding the prosecutor's summation comments (Tr. 181:7-15), petitioner's argument is meritless. The prosecutor's comments represent a fair characterization of the trial evidence, and therefore, do not rise to the level of a due process violation. *See Wright v. Conway*, 2009 WL 3273901 (E.D.N.Y. Oct. 09, 2009) ("Remarks of the prosecutor in summation do not amount to a denial of due process unless they constitute egregious misconduct.") (citations and quotation marks omitted). Moreover, the trial court clearly did not err in discharging the alternate jurors at

---

[7] *See* NYCPL § 440.10(2)(c) ("Although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him . . . .").

the start of jury deliberations. The parties agreed that the alternates would not participate in the deliberations.[8] (Tr. 226:3-8.)

Regarding People's Exhibit Nunber 3, the AEDPA permits federal courts to deny unexhausted claims on the merits. *See* 28 U.S.C. § 2254(b)(2); *accord Turner v. Artuz*, 262 F.3d 118, 122 (2d Cir. 2001). Even if petitioner was never provided an opportunity to see People's Ex. No. 3, this does not raise a federal question. Accordingly, this claim does not warrant habeas relief.[9]

---

[8] Notably, CPL § 270.30 provides that once deliberations begin, alternate jurors must be "kept separate and apart from the regular jurors."

[9] The weather report was properly admitted into evidence with no objection by defense counsel. (Tr. 144:25.)

## III. Conclusion

For the reasons set forth above, Phillips' petition for a writ of habeas corpus is denied. Petitioner is further denied a certificate of appealability as petitioner failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see* FED. R. APP. P. 22(b); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Luciadore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000). The Court certifies pursuant to 28 U.S.C. §1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

DATED:   Brooklyn, New York
         March 29, 2010

_____/s/_____
DORA L. IRIZARRY
United States District Judge